Julian Brew (SBN 150615)
julian@cypressllp.com
Jared L. Watkins (SBN 300393)
jared@cypressllp.com
**CYPRESS LLP**
11111 Santa Monica Boulevard, Suite 500
Los Angeles, CA 90025
Telephone:    424-901-0123
Facsimile:    424-750-5100

Attorneys for Plaintiff-Relator,
**RELATOR LLC**

**FILED**

**Jul 24, 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# SEALED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No.    2:23-cv-1466 DAD DB |
| Plaintiff, | |
| *ex rel.* **RELATOR LLC**, a California limited liability company, | **COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT** |
| Relator, | **FILED *IN CAMERA* UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| v. | |
| **ROBERT IRA POSNER,** an individual; **THOMAS C. LYNCH**, an individual; and **NEW DAY FINANCIAL, LLC**, a Delaware limited liability company; and DOES 1-10, | **DO NOT PLACE ON PACER** |
| Defendants. | **JURY TRIAL DEMANDED** |

C Y P R E S S   L L P
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

COMPLAINT

Plaintiff RELATOR LLC ( "Plaintiff") complains of **Robert Ira Posner** ("Posner"), an individual, **Thomas C. Lynch** ("Lynch"), an individual, and **New Day Financial, LLC** ("NDF"), a Delaware limited liability company:

### JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction over the Plaintiff's claims brought under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732.

2.      This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Eastern District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[1]

3.      Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the basis of this Complaint occurred in the Eastern District of California.

4.      Relator's claims and this Complaint are not based on any prior public disclosures of the fraud or transactions in a criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there was any public disclosure unknown to Relator, it is the "original source" as defined in 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

### INTRODUCTION AND SUMMARY

5.      In this matter a mortgage lender used his lending business to misappropriate millions of dollars from the US Federal government's Paycheck

---

[1] NDF operates throughout California. NDF has formed an operating entity registered in Sacramento, California and transacts business in California.

Protection Program ("PPP"). In order to obtain the loan, the Defendants presented many falsified loan documents to the SBA. Defendants did not have any economic need for the loan, they simply took advantage. In fact, Posner's lending business was booming. Defendants had no economic need for payroll assistance, assuming the loan was used on payroll. Defendants falsified additional documents which were presented to the government to obtain total loan forgiveness, billing millions to the US taxpayer.

6.      Posner used his mortgage lending business, New Day Financial, LLC, which is more commonly known as, "New Day USA,"[2] to apply for and receive a PPP loan totaling **$7,402,800.00**, purportedly to cover payroll costs. However, NDF and its owner Posner:

a.  Falsified loan eligibility;

b.  Admitted to being a consumer lender, NAICS Code 522291 on their PPP loan application;

c.  Falsified the use of the loans on authorized expenses;

d.  Falsified the economic necessity for the loans; and

e.  Falsified the need for loan forgiveness.

7.      While many Americans lost their jobs during the pandemic and many small businesses closed because the PPP money ran out, Defendant and his company took out a PPP loan that they did not need. At the same time, Posner purchased luxury real estate. On July 16, 2020, after receiving millions in PPP loans, Defendant Posner purchased lavish luxury real estate: Jon Bon Jovi's palatial 4,700 square foot mansion in Palm Beach, Florida for $19.8 million. Then, on August 2021 Posner bought a $7.3 million mansion in Palm Beach Florida. Last, on February 17, 2022, Posner bought a 2,796 square foot mansion in Palm Beach Florida for $3.5 million. These extravagant real estate purchases are a strong

---

[2] NDF also does business under its rebranded name "New Day USA."

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

indicator that Defendants did not have financial concerns, as they falsely certified to the US government. If the PPP loan was in fact used as a windfall, essentially the PPP loan money was used to purchase investment real estate.

8.    <u>Obvious Regulations Regarding Money Lenders</u>. NDF applied for and received a PPP loan in the total amount of **$7,402,800.00**, purportedly to cover payroll costs, however this loan was not authorized because NDF is a <u>money lending</u> business and therefore *ineligible* to receive PPP loans. Although the vast majority of American industries are allowed to take PPP loan, a very few select industries are not allowed. One such type of business, are money lenders. The rationale is that money lenders have sources of capital available to them to support their payroll costs.

9.    <u>NDF</u> falsely reported to the SBA that *it was* permitted to take the loans even though SBA has clear rules prohibiting loans to lenders. NDF is a direct lender that provides money loans to consumers, for mortgages. NDF's own Articles of Incorporation with the California Secretary of State lists their business type as "Mortgage Lending." NDF's own website touts its various loan products. It proudly and repeatedly refers to itself as a bank and mortgage lender. Therefore, Defendant's certification was false because **they <u>most definitely are</u> the type of business/industry which is prohibited from SBA loans**.

10.    <u>No Economic Necessity and Mortgage-Backed-Securities (MBS)</u>. The PPP was made to help struggling businesses pay their workers. It is not a free excuse to raid government coffers by wealthy businessmen. NDF did not need the loans -- there was no "need" or "economic necessity" to pay Defendant's payroll expenses.[3] NDF did not and cannot show any decline in revenue during the pandemic. In fact, during this time period, mortgage lenders experienced record

---

[3] NDF is not a small business in dire financial straits, but rather a well-financed finance company. Public information shows their revenue was not declining, and their own statements indicate massive growth and profits. Defendant cannot show "economic necessity" in needing the loans to continue business operations.

C Y P R E S S   L L P
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

profits. This is because of the housing price increases and housing crisis. It is also because of the Federal government's policy to purchase Mortgage Backed-Securities (MBS), which provided mortgage lenders like Defendant a steady source of high income.[4] Indeed, NDF was highly profitable when they took the loan in 2020. They were also highly profitable in 2021 when they asked for loan forgiveness and demanded additional PPP proceeds. Public data shows that NDF currently has upwards of $309.3 million in annual revenue. To achieve this current level of revenue, NDF required large capital sources in 2020 to make the many millions of dollars in loans from which it is now reaping interest income. In other words, NDF certainly had the money to pay their own payroll when they applied for the PPP loan. At the time of the loans, NDF had hundreds of millions of dollars in capital. Yet Defendants falsely certified they had "economic uncertainty" so they could take financial assistance from the US taxpayer. As of 2019, NDF reportedly had a 10 percent increase in loan volume to $2.4 billion and had become the 9th largest VA lender in the county. Furthermore, in 2021, NDF's social media accounts celebrate record-breaking sales achievements and employee promotions. Far from needing the money, Defendants took advantage of the opportunity and used it as a windfall.

11.     In 2020 and 2021, the exact same time period of the loans, NDF actually expanded its business. This included plans for an ambitious second headquarters in West Palm Beach, Florida, that would create a staggering 600 new jobs.

12.     <u>Money Not Returned</u>. The loan was taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. The

---

[4] Agency MBS purchases are issued by the Federal government. The US Federal Reserve has a $1.25 trillion program to purchase mortgages which was restarted on March 15. 2020 as a result of the COVID-19 crises. The result of this program is to provide mortgage lenders with a guaranteed way to sell their mortgage assets. Mortgage lenders like Defendant enjoyed record profits during this time and benefited greatly from this program.

**$7,402,800.00** in funds should have been returned immediately. These loans should never have been sought in the first place. The Defendants went further, sought, and obtained total loan forgiveness, billing the US taxpayers millions of dollars.

13.   <u>Further Falsification on Loan Forgiveness</u>. Defendants falsified further documents in order to receive loan forgiveness. Defendants had to attest as to the use of the funds and the amount used on authorized purposes. They of course were not, and so they also lied on these documents and application also to receive forgiveness.

14.   <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and intentionally made many materially false statements to the government and bank to obtain the loans.

15.   Defendants did in fact receive the loans. *The Defendants have not returned the loan proceeds*.

16.   Defendant used the loan for unauthorized purposes.

17.   Defendant then sought and obtained loan forgiveness. They could not have complied with the requirements of forgiveness given their business type, assuming the company CEO did not simply keep the money.

18.   Plaintiff brings this action as relator on behalf of the United States of America to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. Plaintiff gave notice of its intent to file and fulfill disclosure of the evidentiary basis to the Department of Justice ("DOJ").

**THE PARTIES**

19.   Plaintiff is a California limited liability company with its principal place of business in Los Angeles, California.

20.   Defendant Posner is an individual and, at all relevant times herein, is and was the Chief Executive Officer and Director of NDF.

21.   Defendant Lynch is an individual and, at all relevant times herein, is and was the Executive Chairman of NDF.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1    22.    Defendant NDF is a Delaware corporation formed in 1998 with its

2    principal place of business, 8160 Maple Lawn Blvd, Fulton, Maryland 20759.

3    23.    NDF is a mortgage lender which directly provides VA Home Loans,

4    Refinancing, and money loans to people in return for an ownership interest in their

5    homes. The true names and capacities, whether individual, partner, associate,

6    corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of

7    them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such

8    fictitious names.  Plaintiff is informed and believes and thereon alleges that each

9    Defendant designated herein as a "DOE" is legally responsible in some manner for

10   the events and happenings herein mentioned.  Plaintiff will seek leave of Court to

11   amend this Complaint to reflect the true names and capacities of said DOES, and

12   add appropriate charging allegations against said DOES when their identities have

13   been ascertained.  Plaintiff is informed and believes that each of the DOE

14   Defendants were responsible in some manner for the injuries and damages alleged

15   herein, and/or for the wrongful acts of some or all of the Defendants.

16   24.    Plaintiff is further informed and believes that each of the Defendants,

17   whether specifically named or named as a DOE, was an agent, employee, servant

18   and/or representative of each of the remaining Defendants, and, in doing or failing

19   to do the things alleged herein, was acting within the course and scope of said

20   agency, employment, service and/or representation.

21   25.    Plaintiff is further informed and believes that each of the Defendants,

22   whether specifically named herein or named as a DOE, approved, ratified and/or

23   acquiesced in the acts and omissions of each of the remaining Defendants.

24   26.    Plaintiff is further informed and believes that each of the Defendants

25   herein, whether named as DOES or otherwise, acted in concert, agreement and

26   conspiracy with the other Defendants for the common purpose of engaging in a

27   scheme to defraud as alleged below.

28

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

**THE CARES ACT AND PAYCHECK PROTECTION PROGRAM**

27.      On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for eligible individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

28.      The CARES Act authorized loans to eligible small businesses struggling to pay employees and stay in business as a result of the devastating effect of the COVID-19 pandemic and resulting restrictions.

29.      Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

30.      On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and authority for the PPP. On June 5, 2020, the PPP Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

31.      Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend all loan proceeds only for employee compensation, rent or mortgage, and certain other specified expenses. Depending on their use of the loan proceeds as certified, they could qualify for loan forgiveness, up to the full amount of the loan.

32.      The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or "Second Draw" loan, an eligible business (through its authorized representative)

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

7

had to sign and submit a PPP loan application (SBA Form 2483) online through the lender's platform. The PPP loan application (SBA Form 2483) required the business (through its representative) to acknowledge the PPP program rules and make certain certifications in order to be eligible to obtain the PPP loan, including certifying that their certifications were true.

33.    Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

34.    After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | | |
|---|---|---|---|
| • The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker | ☐ Yes | | ☐ No |

| protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |
|---|---|---|

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

35.    SBA Form 2483 includes the following certification, among others: "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the "Understanding Certification").

36.    SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

37.    SBA Form 2483 also includes the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

38.    SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

9

39.     SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification").

40.     SBA Form 2483 also includes the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (the "Single Loan Certification").

41.     SBA Form 2483 also includes the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (the "No False Statements Certification").

42.     After the borrower submitted a PPP loan application, it was processed by the participating lender. If the PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lender and be responsible for its repayment.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

10

43.    Under applicable SBA rules and guidance, recipients of PPP loans could apply to have principal and interest on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

44.    Loans could only be used for certain permitted expenses, such as to pay employees' salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to COVID19.

45.    More specifically, the loan forgiveness application (SBA Form 3508), revised as of July 30, 2021, included the following certifications, among others:

(1)    The dollar amount for which forgiveness is requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

- includes payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

11

employee or self-employed individual/general partner, capped at
$15,385 per individual.

(2)    I understand that if the funds were knowingly used for
unauthorized purposes, the federal government may pursue recovery of
loan amounts and/or civil or criminal fraud charges.

(3)    The Borrower has accurately verified the payments for the
eligible payroll and nonpayroll costs for which the Borrower is
requesting forgiveness.

(4)    The Borrower's eligibility for loan forgiveness will be evaluated
in accordance with the PPP regulations and guidance issued by SBA
through the date of this application.

46.    13 CFR§ 120.110 provides a list of what type of business are
INELIGIBLE for SBA loans. This list includes lenders like Defendant …

**"(b) Financial businesses primarily engaged in the business of lending,
such as banks, finance companies, and factors (pawn shops, although
engaged in lending, may qualify in some circumstances)"**

47.    On April 2, 2020, the SBA posted the First PPP Interim Final Rule
announcing the implementation of the CARES Act. SBA posted additional interim
final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an
interim final rule supplementing the previously posted interim final rules with
additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28,
2020 / Rules and Regulations at, 23450-52, available at
https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-
for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.COMMERCE.
This interim final rule supplemented previous regulations and guidance on several
important, discrete issues. The April 28, 2020, Interim Final Rule was immediately
effective without advance notice and public comment because section 1114 of the

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1  CARES Act authorized SBA to issue regulations to implement Title I of the

2  CARES Act without regard to notice requirements. Id.

3       48.    With respect to the PPP, the January 6, 2021, Interim Final Rule

4  provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts

5  113, 120 and 121.

6       *"Are businesses that are generally ineligible for 7(a) loans under 13*

7       *CFR120.110 eligible for a PPP loan?"*

8       **Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP**

9       **loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n)**

10      **is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise,**

11      **a business is not eligible for a PPP loan if it is a type of business concern**

12      **(or would be, if the entity were a business concern) described in 13**

13      **C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of**

14      **this rule or otherwise permitted by PPP rules. Businesses that are not**

15      **generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described**

16      **further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2,**

17      **Section A, Chapter 3.**

18

19

20

21

22

23

24

25

26  / / /

27  / / /

28  / / /

COMPLAINT

1    49.    The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2,

2  Section A, Chapter 3 states as follows:

**CHAPTER 3: INELIGIBLE BUSINESSES**

**A.  TYPES OF INELIGIBLE BUSINESSES**

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list may be eligible under limited circumstances, as discussed below.

1.  Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may be eligible). 13 CFR § 120.110 (a)

2.  Businesses Engaged in Lending 13 CFR § 120.110 (b).

   a.  SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investment, or to an otherwise eligible business engaged in financing, factoring, or investment not related or essential to the business. This prohibits SBA Loans to:

      i.   Banks;

      ii.  Life Insurance Companies (but not independent agents);

      iii. Finance Companies;

      iv.  Factoring Companies;

      v.   Investment Companies;

      vi.  Bail Bond Companies; and

      vii. Other businesses whose stock in trade is money.

   b.  The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

      i.   A pawn shop that provides financing is eligible if more than 50% of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

      ii.  A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.

      iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

      iv.  A check cashing business is eligible if it receives more than 50% of its revenue from the service of cashing checks.

Effective October 1, 2020                                          Page 141

**DEFENDANTS' FRAUD**

27    50.    During round 1 of the paycheck protection program ("First Draw"),

28  NDF applied for a PPP loan for **$7,402,800.00**. The loan was approved on April 13,

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

14

1   2020, by the SBA for the full amount, which was disbursed. The loan was
2   facilitated by Eaglebank. Defendant received 100% of the approved amount. On its
3   application for this loan, Defendant stated that it had 488 employees for which it
4   needed the loan. This loan was forgiven on January 28, 2022.

5       51.     In order to receive the PPP loan for $7,402,800.00, Defendants had to
6   complete SBA Form 2483 entitled "Borrower Application Form". In doing so,
7   Defendants intentionally made materially false statements with respect to the
8   Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity
9   Certification, the Worker Retention and Payroll Certification, the No False
10  Statements Certification and the Single Loan Certification.

11      52.     **Defendant's Eligibility Certification was false because NDF is most**
12  **definitely the type of business/industry which is <u>prohibited</u> from SBA loans:**
13  **NDF is a lender**.

14      53.     NDF admits to being a direct lender on its website, through its
15  licensure and public statements about its products. NDF is expressly prohibited
16  from receiving SBA loans, including PPP loans. NDF's CEO, Posner, is a
17  sophisticated, experienced businessman. He knew about the restrictions. The legal
18  and financial experts he has hired over the years, would have known this. Posner
19  intentionally broke these clear rules knowing what he was doing. He has navigated
20  the highly regulated business of lending for decades since founding the company.
21  He has successfully expanded the mortgage company and would have had to
22  manage and investigate the many regulations he encountered along the way. He
23  would have quickly discovered that these loans were not permitted, especially given
24  the amounts involved and the expertise and capabilities of the people working in his
25  company.

26      54.     In addition to complying with applicable business type ineligibility
27  rules, all borrowers should carefully review the required Economic Certainty
28  certification on the Borrower Application Form stating that ''[c]urrent economic

C Y P R E S S   L L P
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1    uncertainty makes this loan request necessary to support the ongoing operations of

2    the Applicant.''

3       55.    NDF is an obviously successful money lending business. They took

4    advantage of every aspect of the PPP program, from faking economic uncertainty to

5    willfully ignoring prohibitions on their industry, to maximizing the amount of the

6    loan and then loan forgiveness. Discovery will reveal where the millions in PPP

7    funds were actually spent, but what is obvious is that Defendants *did not need any*

8    *money from US taxpayers*. The business was lending other people money. NDF is

9    and was highly profitable during the pandemic, just like most in their industry.

10   NDF did not suffer any business loss and certainly had the money to pay their own

11   worker wages. Their "stock in trade" is money and business was booming.

12   Defendants simply ripped off the PPP program and had the US taxpayers subsidize

13   their lending business, at best, or to subsidize the CEOs luxury lifestyle, at worst.

14      56.    Defendants signed the loan applications, thereby endorsing the

15   Understanding Certification, which means that they agreed that they understood the

16   rules and guidelines of the PPP, including, without limitation the rules regarding

17   use of proceeds and the certifications made.

18      57.    The proceeds of the PPP Loans were not and could not have been used

19   only for authorized purposes consistent with the PPP Rule, because, among other

20   things, the Defendant was obviously not allowed to take PPP loans because of their

21   industry type - money lenders. Therefore, when Defendants made the Use of

22   Proceeds Certification, the certification was false.

23      58.    The proceeds of the PPP Loans were not necessary to support the

24   ongoing operations of NDF. The company's enjoyed record high business

25   achievements since 2020 until today. It has been widely reported that mortgage

26   lenders, like the Defendants' were highly profitable during the housing market price

27   increases and high demand in 2020 and 2021. This company had considerable

28   financial resources to pay its own workers, assuming that is where the money was

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

COMPLAINT

1  spent rather than into the pocket of the CEO and its executives. Therefore, when
2  Defendants made the Economic Necessity Certification, the certification was false.

3       59.    The PPP loan money was only allowed to be used on authorized
4  expenses. The proceeds of the PPP Loan were not permitted to be used to pay
5  business costs for a business in the lending industry, therefore when Defendant
6  made the Worker Retention and Payroll Certification, the certification was false.

7       60.    By virtue of the above false statements, when Defendants made the No
8  False Statements Certification, that certification was false.

9       61.    The Defendants actively pursued and obtained loan forgiveness.
10  Because NDF is prohibited from obtaining any PPP loans, its representation on its
11  forgiveness application that it spent 100% of the loan proceeds on eligible expenses
12  was not truthful. The SBA would not have forgiven the loans if they knew
13  Defendants' certifications described above were false.  They also would not have
14  forgiven the loans if they knew the proceeds had been used to increase profits
15  instead of paying their employees..

16       62.    As a result of the forgiveness, Defendants have not repaid the loan and
17  have kept the proceeds, and the loan has been repaid with money from taxpayers,
18  including the small businesses and owners who were supposed to receive the PPP
19  funds instead of repaying a profitable mortgage lender's loan that it never should
20  have received, let alone had forgiven.

21                      **THE FALSE CLAIMS ACT**

22       63.    The False Claims Act prohibits fraudulent conduct in connection with
23  federal programs, including the knowing submission of false claims for payment to
24  the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability
25  may attach if the omission renders those representations misleading. 41. 31 U.S.C.
26  § 3729(a)(1)(A) and (B) of the FCA provide that:

27              (1) . . . any person who—

28              (A) knowingly presents, or causes to be presented, a false or fraudulent

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

17
COMPLAINT

1    claim for payment or approval; [or]

2          (B) knowingly makes, uses, or causes to be made or used, a false

3    record or statement material to a false or fraudulent claim,

4          . . .

5          (G) knowingly makes, uses, or causes to be made or used, a false

6    record or statement material to an obligation to pay or transmit money or property

7    to the Government, or knowingly conceals or knowingly and improperly avoids or

8    decreases an obligation to pay or transmit money or property to the Government, is

9    liable to the United States Government . . .

10          31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

11          42. The scope of a false or fraudulent claim is to be broadly construed.

12    As used in the FCA, a "claim"

13          (A) means any request or demand, whether under a contract or

14    otherwise, for money or property and whether or not the United States has title to

15    the money or property, that—

16          (i) is presented to an officer, employee, or agent of the United States;

17    or

18          (ii) is made to a contractor, grantee, or other recipient, if the money or

19    property is to be spent or used on the Government's behalf or to advance a

20    Government program or interest, and if the United States Government—

21          (I) provides or has provided any portion of the money or property

22    requested or demanded; or

23          (II) will reimburse such contractor, grantee, or other recipient for any

24    portion of the money or property which is requested or demanded; . . .

25          31 U.S.C. § 3729(b)(2) (2020).

26       64.    A person who violates the False Claims Act during the time period at

27    issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages

28    which the United States Government sustains because of the act of that person." 31

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

---

18

COMPLAINT

U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-09928.COMMERCE.

## FIRST CAUSE OF ACTION

## FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))

65.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

66.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

67.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, each of Defendants' Economic Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and Payroll Certifications described above all were knowingly false, and relied upon by lenders and the SBA in approving the PPP Loans.  Their request for forgiveness contained a further misrepresentation that the loans had been used only for authorized purposes.

68.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

69.    The Government and its agents and contractors relied on those false statements in approving and making the loans and subsequently forgiving them, leaving the burden of repayment on taxpayers.

70.    Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than

$25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein, and attorneys' fees in an amount to be proven.

## CONCLUSION

71.    Posner and his company abused the PPP. The PPP was meant for struggling businesses. Now that program is dry. The American people have a right to reconciliation.

## **PRAYER FOR RELIEF**

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2023                    CYPRESS LLP


                                        By:    /s/ Julian Brew
                                               JULIAN BREW
                                               JARED L. WATKINS
                                               Attorneys for Plaintiff-Relator
                                               RELATOR LLC

COMPLAINT